IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHAVIS PORTER and  )  <br>MELISSA PORTER )  <br>         )  <br>     Plaintiffs,   )  <br>         )  <br>v.       )  <br>         )  <br>CRUMPTON & ASSOCIATES, LLC, and )  <br>AMERICAN GUARANTEE &   )  <br>LIABILITY INSURANCE COMPANY )  <br>         )  <br>     Defendants.  )  | Case No. 2:12-cv-103-MEF <br>(WO—Publish) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

American Guarantee & Liability Insurance Company, one of the defendants, removed this case from state to federal court by filing a notice of removal. (Doc. # 1.) Chavis and Melissa Porter, the plaintiffs, filed a Motion to Remand (Doc. # 10), seeking a return to state court to litigate their claims. After having considered the parties' briefs, it is the opinion of the Court that the motion is due to be DENIED.

**II. BACKGROUND**

This case is an insurance coverage dispute. The plaintiffs are Alabama citizens Chavis and Melissa Porter. The defendants are Crumpton & Associates, LLC, a law firm and limited liability company, and American Guarantee & Liability Insurance Company, a New York corporation with its principal place of business in Illinois.

1

The underlying conflict revolves around a professional liability policy issued by American Guarantee to Crumpton & Associates (later Crumpton & Sellers Law Group, LLC). American Guarantee issued the policy as a claims-made-and-reported agreement covering the law firm from October 7, 2009, to October 7, 2010. The law firm failed to remit premium payments, however, and American Guarantee cancelled the policy on December 8, 2009.

The Porters sued Crumpton & Sellers Law Group, LLC, and Crumpton & Associates, LLC, in Alabama state court on July 13, 2011.[1] Their complaint pressed a single claim for legal services liability against the two firms. More specifically, the Porters alleged that Robert Crumpton closed a loan for them, took control of the proceeds, and then commingled the funds in his business account, which caused him to fail to pay off a debt the Porters owed.

The day after filing suit, the Porters' lawyer sent American Guarantee a copy of the complaint. About a month after that, American Guarantee sent Crumpton & Sellers a letter stating that it refused to defend and indemnify the law firm. The insurer based its denial on how the law firm made a claim that ostensibly fell outside the period covered by the policy.

In October of 2011, the Porters obtained a $250,000 judgment against Crumpton & Associates on their malpractice claim. Seeking to collect, the Porters filed suit in state

---

[1] In their response brief, the Porters note that Crumpton & Associates preceded Crumpton & Sellers Law Group. It appears that, in 2009, Crumpton & Associates ceased to be and Crumpton & Sellers was created.

court once again. This time they brought an action under an Alabama statute allowing judgment creditors to seek satisfaction of their judgment against the insurance company that owes indemnity to the judgment debtor. *See* Ala. Code § 27-23-2. In the collection action, the Porters claimed that American Guarantee owed them $250,000 for the judgment against Crumpton & Associates because American Guarantee insured the law firm at the time the malpractice occurred. The Porters also joined Crumpton & Associates in the collection action, as required by the statute.

American Guarantee removed the pending state court action against it to federal court. In the Porters' ensuing motion to remand, they argue that Crumpton & Associates' presence as a defendant destroys the complete diversity required for subject matter jurisdiction. Alternatively, they contend that, even if the Court realigns the parties according to their interests, a case filed under Alabama's judgment creditor collection statute amounts to a "direct action" under 28 U.S.C. § 1332(c)(1). This would require the Court to consider American Guarantee a citizen of Alabama, according to the Porters.

### III. SHOULD THE ACTION BE REMANDED?

#### A. The remand standard

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As a result, they only have the power to hear cases over which the Constitution or Congress has given them authority. *See Kokkonen*, 511 U.S. at 377.

Congress has empowered the federal courts to hear a case removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing defendant bears the burden of showing that a district court has subject matter jurisdiction over the action. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). And although the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear, *see Burns*, 31 F.3d at 1095, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### B. The removal statutes

The removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove an action from state to federal court if the plaintiff could have originally brought his claim in federal court. Removing an action implicates federalism and comity concerns, however, because it requires a federal court to snatch the case out of state court. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). To ameliorate these concerns, federal courts construe the removal statutes narrowly, with all doubts resolved in favor of remand to state court. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

With this in mind, for this Court to exercise removal jurisdiction based on diversity, there must exist "complete diversity" between adverse parties—no plaintiff may share state citizenship with any of the defendants. *See Riley v. Merrill Lynch, Pierce,*

4

*Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). In addition, the amount in controversy must exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Here, the dispute easily meets the amount in controversy requirement: the Porters want to collect on their $250,000 state court judgment. So the only dispute is whether the parties satisfy the complete diversity requirement.

### C. Analysis

The Porters and American Guarantee both cite a bevy of case law supporting their respective views on whether the Court should realign the parties to match their respective interests, and whether the "direct action" language in § 1332(c)(1) applies here. On the one hand, the Porters cite to district court opinions remanding similar cases. *See, e.g.*, *Wheelwright Trucking Co. v. Dorsey Trailers*, 158 F. Supp. 2d 1298 (M.D. Ala. 2001) (DeMent, J.); *Andalusia Enters., Inc. v. Evanston Ins. Co.*, 487 F. Supp. 2d 1290 (N.D. Ala. 2007) (Acker, J.); *PACA, Inc. v. Nat'l Union Fire Ins. Co.*, No. 06-cv-437, 2007 WL 98722 (M.D. Ala. Jan. 11, 2007) (Fuller, J.). On the other hand, American Guarantee offers up a number of decisions from the United States' courts of appeal, as well as some district court opinions, calling for the opposite result. *See, e.g.*, *Fortson v. St .Paul Fire & Marine Ins. Co.*, 751 F.2d 1157 (11th Cir. 1985); *Indem. Ins. Co. of N. Am. v. First Nat'l Bank*, 351 F.3d 519 (5th Cir. 1965); *Armentrout v. Atlantic Cas. Ins. Co.*, 731 F. Supp. 2d 1249 (S.D. Ala. 2010); *Cromwell v. Admiral Ins. Co.*, No. 11-cv-155, 2011 WL 2670098 (S.D. Ala. June 21, 2011).

Fortunately, the Eleventh Circuit has recently settled the score in a case virtually identical to this one. In *Vestavia Hills v. General Fidelity Insurance Company*, ___ F.3d ___, No. 11-13091, 2012 WL 1232110 (11th Cir. Apr. 13, 2012), a judgment creditor (Vestavia Hills) brought suit in state court and under Alabama law against a judgment debtor (Cameron Development) and its insurer (General Fidelity) seeking to collect on a $442,263 judgment. General Fidelity removed the case to federal court, and Vestavia Hills moved to remand the case back to state court. The district court denied Vestavia Hills' motion, finding that it had jurisdiction over the matter after realigning the parties.

The Eleventh Circuit agreed and rejected the same arguments that the Porters make here. On the realignment issue, the court of appeals found the district court's actions proper, noting how the interests of the judgment creditor and judgment debtor aligned because both wanted to get the insurer to pay the judgment. ___ F.3d at ___, 2012 WL 1232110 at *2. In upholding the district court's denial of remand, the Eleventh Circuit first reaffirmed the principle purpose test, which requires district courts to align the parties according to their interests in the suit, *see, e.g.*, *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941), and explicitly rejected the argument that a district court has to accept how the Alabama Code aligns the parties. ___ F.3d at ___, 2012 WL 1232110 at *3.

Like the Porters, Vestavia Hills also argued that realigning the parties would turn the case into a direct action under § 1332(c)(1). The Eleventh Circuit rejected this argument. It relied on *Fortson v. St. Paul Fire & Marine Insurance Co.*, 751 F.2d 1157,

1159 (11th Cir. 1985), a case which held that § 1332(c)(1) only applies where a plaintiff can sue the defendant's insurer directly without first having to join or obtain a judgment against the insured. ___ F.3d at ___, 2012 WL 1232110 at *3 (citing *Fortson*, 751 F.2d at 1159). Applying this holding, the *Vestavia Hills* court held that § 27-23-2 of the Alabama Code is not a statute conferring the right to bring a "direct action" against an insurer, because the injured party has to first obtain a judgment against the insured before suing the insurer before he can press a claim under the collection statute. *Id.* at ___, *4.

The Court finds that *Vestavia Hills* directly controls the dispositive issues in this case. The Porters' interests as the judgment creditor align directly with those of Crumpton & Associates, the judgment debtor, because both parties want American Guarantee to pay the judgment. This situation mirrors exactly the circumstances in *Vestavia Hills*, where the interests of the judgment creditor and judgment debtor aligned against the insurer. In other words, it would make little sense to stick Crumpton & Associates on the same side of the "v" as American Guarantee when determining whether there exists complete diversity between adverse parties. Accordingly, for the purpose of determining diversity, the Court will consider both the Porters and Crumpton & Associates as the plaintiffs, and American Guarantee as the defendant.

Anticipating this outcome, the Porters also argue that 28 U.S.C. § 1332(c)(1) requires the Court to impute Crumpton & Associates' citizenship to American Guarantee. Section 1332(c)(1) states the general rule that, for diversity purposes, courts should treat a corporation as a citizen of the State in which it was incorporated and the State where it

has its principal place of business. But the statute also includes an exception for when a plaintiff brings a "direct action against the insurer of a policy or contract of liability insurance." 28 U.S.C. § 1332(c)(1). In this scenario, the insurer is "deemed a citizen of the State of which the insured is a citizen," as well as the insurer's State of incorporation and principal place of business. *Id.* Thus, § 1332(c)(1) eliminates "the basis for diversity jurisdiction in states that allow an injured third-party claimant to sue an insurance company for payment of a claim without joining the company's insured as a party, where the insured would be a non-diverse party, even though the party insurance company would otherwise be diverse." *Fortson*, 751 F.2d at 1159.

The reason for this exception is simple. If a plaintiff sues a tortfeasor's insurer without first joining the tortfeasor or obtaining a judgment against him, the insurer and tortfeasor have a unified interest in contesting liability and damages. Both want to retreat behind the castle walls, raise the drawbridge, and began preparing to defend against the plaintiff's siege. And because both insurer and tortfeasor have manned the same walls, it only makes sense to treat them as citizens of the same jurisdiction. Which is exactly what § 1332(c)(1)'s exception seeks to accomplish. The situation changes, however, when the plaintiff has already conquered the tortfeasor. Then, the tortfeasor's allegiance shifts, and he has little choice but to join the plaintiff in his attempt to storm the insurer's castle. Hence it would make far less sense to treat the insurer and tortfeasor as allies in this scenario, and *Fortson* and *Vestavia Hills* make clear that district courts should not do so.

Here, the Porters gallantly obtained a state court judgment against Crumpton &

Associates before filing suit under Alabama Code § 27-23-2. With the conquerors' interests now aligned with those of the conquered, the Porters and Crumpton & Associates are now natural, even if grudging, allies against American Guarantee. This takes their alliance outside the reach of the exception contained in § 1332(c)(1). *Vestavia Hills*, ___ F.3d at ____, 2012 WL 1232110 at *3; *Fortson*, 751 F.2d at 1159; *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 723 (5th Cir. 1974) (holding § 1332(c) only applies where "a party claiming to have suffered injuries or damage for which another is legally responsible is entitled to sue the other's liability insur[e]r without joining the insured and without having first obtained a judgment against the insured."). Therefore, American Guarantee will not be deemed a citizen of the same State as Crumpton & Associates.

Having disposed of the Porters' arguments, and after realigning the parties, the Court still must determine whether it has diversity jurisdiction over the case. As discussed briefly above, the controversy surrounds a $250,000 judgment obtained by the Porters. This easily exceeds the $75,000 amount in controversy requirement.

On the question of the parties complete diversity, the Porters are citizens of Alabama and American Guarantee is a New York corporation with its principal place of business in Illinois. The only question, then, is the citizenship of Crumpton & Associates, a limited liability company. In American Guarantee's Notice of Removal (Doc. # 1), the insurer alleges that Crumpton & Associates "is an Alabama Limited Liability Company with its principal place of business in Alabama." This does not suffice. The Eleventh Circuit has held that a limited liability company, like a partnership, "is a citizen of any

9

state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). So "[t]o sufficiently allege the citizenship[] of [an] unincorporated business entit[y], a party must list the citizenships of all the members of the limited liability company." *Id.* American Guarantee has not done so. But fortunately for the insurer, this defect in its removal notice does not require remand. Rather, a party can amend its defective pleadings so as to cure the defect. 28 § U.S.C. 1653. And because the Court suspects that, even after accounting for the citizenships of all of its members, Crumpton & Associates will be diverse from American Guarantee, the insurer will get the opportunity to fix the problem.

## IV. CONCLUSION

After having fully considered the parties' briefs and their arguments in support of their respective positions, and for the reasons discussed above, it is hereby ORDERED as follows:

1. The Porters' Motion to Remand (Doc. # 10) is DENIED.

2. American Guarantee is to determine the citizenships of each of the members of Crumpton & Associates at the time of removal and file a notice informing the Court of that information.

Done this the 29th day of May, 2012.

                                            /s/ Mark E. Fuller
                                      UNITED STATES DISTRICT JUDGE